# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **JEROME PERKINS,** | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:22-CV-00005 |
| **S.C.C.F. CORE CIVIC, *et al.*,** | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE HOLMES |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Jerome Perkins, #251906, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against "S.C.C.F. Core Civic," Warden f/n/u Perry, "R-DAP Program-Counselors", Kimberly Atkins, Amber Gunter, Holly Tatum, f/n/u Mallard, and f/n/u Burlisky, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1). Plaintiff also submitted a "Notice of Filing Civil Law Suit Case" in which he reiterates his claims. (Doc. No. 5).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and

1

summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. ALLEGED FACTS

The complaint alleges that, on November 8, 2021, early in the morning Plaintiff and his cellmate got into a fight. R-DAP counselors Atkins and Gunter told inmate David White and other inmates that Plaintiff's cellmate was going to die because of the injuries he sustained in the fight,

2

which was untrue. According to the complaint, this lie "put them [White and other inmates] in killing mode." (Doc. No. 1 at 17). White, along with inmates f/n/u Pike, Payton l/n/u, and Thaton f/n/u, told Atkins and Gunter that the inmates wanted Plaintiff removed from the R-DAP program. Atkins and Gunter told the inmates, "If ya'll want him out then ya'll put him out anyway that ya'll want to." (Doc. No. 1 at 4). According to the complaint, R-DAP counselors Burlisky, Tatum, Gunter, and Atkins "retaliated on [Plaintiff] in a most dangerous, hateful, and racist way by telling the Brotherhood white inmates . . . to send[] a mob of white inmates to beat [Plaintiff] down." (Doc. No. 1 at 9). These Defendants "gave permission with no remorse or thoughts to what could have happened to [Plaintiff] in a pure and evil way." (*Id*. at 15). They left Plaintiff in a pod alone when they knew the other inmates were coming and what these inmates had in mind. (*Id*. at 17).

Forty or fifty white inmates joined the initial group of inmates and went to Plaintiff's cell. The large group of inmates "jumped" Plaintiff after inmate White told them "nothing would happen" to them if they did so. (*Id*. at 4). Plaintiff was "brutally beaten." (*Id*.) As a result of the attack, Plaintiff has a "major headache every day." (*Id*. at 10). He has difficulty with focus and memory. (*Id*.) Plaintiff lost approximately $200 worth of food on the day of the incident because an unidentified corrections officer opened Plaintiff's cell door for the attacking inmates. (*Id*. at 12). The inmates stole some food, and the rest was taken by "the women of R-DAP." (*Id*.)

The complaint alleges that Defendants Burlisky, Tatum, Gunter, and Atkins observed the attack but took no action to assist Plaintiff. (*Id*. at 12). Additionally, the complaint alleges that Chief of Security Coleman, Unit Manager Sarratt, Corrections Officer Griffon, an as-yet identified unit manager, and other as-yet identified nurses and staff members "did nothing" for Plaintiff when he sought medical treatment for his injuries. (*Id*. at 12). When Plaintiff explained what happened, they laughed at him and told him "that's what [he gets], and it was all [his] fault, and that they was

3

[sic] not going to do nothing [sic] to none [sic] of the inmates that jumped [Plaintiff]." (*Id.*) These individuals placed Plaintiff "in the hole with no medical attention" where he "laid on the ground in a freezing cell hoping that [he] didn't die in [his] sleep for 9 days." (*Id.*)

According to the complaint, there was no investigation of the incident and no inmates were punished for attacking Plaintiff. (*Id.* at 13). By failing to investigate and handle the matter, Plaintiff believes the Warden "show[ed] Plaintiff that [he] didn't deserve no [sic] respect from" the Warden. (*Id.*)

Plaintiff seeks $2,000,000 in compensatory damages for the pain and suffering he endured from the attack and resulting injuries. (*Id.* at 5).

## IV. ANALYSIS

The complaint names as Defendants the following: "S.C.C.F. Core Civic," Warden f/n/u Perry, "R-DAP Program-Counselors", Kimberly Atkins, Amber Gunter, Holly Tatum, f/n/u Mallard, and f/n/u Burlisky.

### A. Preliminary Matters

First, in addition to the Defendants enumerated above, the docket in this case lists "Trousdale Turner Core Civic", f/n/u Grossman, f/n/u Gross, f/n/u Holmes, and f/n/u Lestor as Defendants. However, Plaintiff does not name these individuals and entities as defendants to this action. Plaintiff includes them only when referencing a previous lawsuit he filed. (*See* Doc. No. 1 at 6). Consequently, the Clerk will be directed to remove "Trousdale Turner Core Civic", f/n/u Grossman, f/n/u Gross, f/n/u Holmes, and f/n/u Lestor as Defendants to this action.

Second, Plaintiff names "S.C.C.F. Core Civic" as a Defendant to this action. The South Central Correctional Facility is a building; it is not "person" who can be sued under 42 U.S.C. § 1983. *Plemons v. CoreCivic Admin. Headquarters*, No. 3:18-cv-00498, 2018 WL 4094816, at *3

4

(M.D. Tenn. Aug. 28, 2018) (quoting *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under § 1983)). Thus, the complaint fails to state a Section 1983 claim upon which relief can be granted against the South Central Correctional Facility, and all claims against South Central Correctional Facility will be dismissed.

Plaintiff conflates the South Central Correctional Facility and CoreCivic and refers to these parties as one entity. Giving Plaintiff the benefit of the doubt as a pro se litigant, the Court construes the complaint to allege claims against CoreCivic in addition to the South Central Correctional Facility. CoreCivic is the private entity contracted to manage the South Central Correctional Facility and other penal facilities. *See Shallenberger v. CoreCivic-Trousdale Turner Corr. Ctr.*, No. 3:19-cv-00900, 2020 WL 869984, at *3 & n.1 (M.D. Tenn. Feb. 21, 2020) (citing *Plemons*, 2018 WL 4094816, at *3 & n. 1). In so doing, CoreCivic "performs the traditional state function of operating a prison." *Gennoe v. Washburn*, Case No. 3:19-cv-00478, 2019 WL 5693929, at *5 (M.D. Tenn. Nov. 4, 2019) (citations omitted). CoreCivic therefore is subject to suit under Section 1983. *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014)).

The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Therefore, CoreCivic "cannot be held liable under a theory of respondeat superior." *Street*, 102 F.3d at 818; *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To succeed on a Section

5

1983 claim against CoreCivic, a plaintiff must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of CoreCivic directly caused the violation. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)); *Braswell*, 419 F. App'x at 627. Here, the complaint makes no allegation regarding a "policy or custom" of CoreCivic. Thus, the complaint fails to state a claim under Section 1983 against CoreCivic, and CoreCivic will be dismissed as a Defendant to this action.

Third, the complaint names "R-DAP Program Counselors" collectively as one Defendant to this action. (Doc. No. 1 at 1). Later in the complaint Plaintiff identifies the particular R-DAP Program counselors he names as Defendants to this action: Kimberly Atkins, Amber Gunter, Holly Tatum, f/n/u Mallard, and f/n/u Burlisky. (*Id*. at 4). Thus, "R-DAP Program Counselors" will be dismissed as a Defendant to avoid duplication and confusion.

Finally, the complaint names R-DAP counselor f/n/u Mallard as a Defendant to this action. (Doc. No. 1 at 4). However, Mallard is not mentioned at any other point in the complaint. Neither is Mallard mentioned in the Notice filed by Plaintiff subsequent to his complaint. (Doc. No. 5). A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *see Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982), and Plaintiff has not alleged any specific personal involvement by Defendant Mallard in the events described in the complaint. Therefore, Plaintiff's claims against Mallard fail to state claims under Section 1983 upon which relief can be granted. Those claims will be dismissed.

B.  **Failure to Protect or Intervene**

The complaint alleges that several Defendants failed to protect Plaintiff from a known risk to his personal safety and/or failed to intervene when Plaintiff was being attacked. Specifically,

the complaint alleges that Defendants Atkins and Gunter encouraged a large group of inmates to attack Plaintiff on November 8, 2021 and that Defendants Burlisky, Tatum, Gunter, and Atkins observed the attack and failed to intervene.

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Brittain v. Clemons,* No. 4:09CV-P123-M, 2011 WL 2471587, at *5 (W.D. Ky. June 21, 2011). "Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer v. Brennan*, 511 U.S. 825, 858 (1994) (Thomas, J. concurring). Consequently, "some level of prison violence is unavoidable no matter what precautions are taken and officers cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted." *Brittain*, 2011 WL 2471587 at *6. "[A] prison official may be held liable . . . for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. 825, 847.

First, "to establish a constitutional violation based on failure to protect, a prison inmate [ ] must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Brennan*, 511 U.S. at 833). "The inmate must show that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id*.

Second, "a plaintiff also must show that prison officials acted with [subjective] 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Brennan*, 511 U.S. at 834). A plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." *Brennan*, 511 U.S. at 835. An official is deliberately indifferent where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which

7

the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id*. at 837. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838. In analyzing the subjective component, a district court should consider each defendant's state of mind individually, not collectively. *Bishop*, 636 F.3d at 767.

Additionally, "prison officials who actually knew of a substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Brennan*, 511 U.S. at 844. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." *Id*. at 845 (emphasis in original).

Being attacked in prison, such as Plaintiff experienced here, is not "part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. 337, 347). Plaintiff thus has sufficiently alleged the objective prong of an Eighth Amendment claim of failure to protect against Defendants Atkins and Gunter.

As for the subjective prong, the complaint alleges that Defendants Atkins and Gunter encouraged the large group of inmates to attack Plaintiff on November 8, 2021 "with no remorse or thoughts to what could have happened to [Plaintff] in a pure and evil way." (Doc. No. 1 at 15). For purposes of initial review, these allegations sufficiently allege that Defendants Atkins and Gunter "acted with [subjective] 'deliberate indifference'" to Plaintiff's health and safety. *Bishop*, 636 F.3d 757, 766 (quoting *Brennan*, 511 U.S. at 833); *see e.g., Plemons*, 2018 WL 4094816, at *4 (concluding that plaintiff had stated individual capacity claim against corrections defendant for failing to protect plaintiff rom being beaten by prison gang members).

8

The complaint also alleges that Defendants Burlisky, Tatum, Gunter, and Atkins observed the November 8, 2021 attack and failed to intervene. Constitutional liability for failure to protect can be based upon facts showing that an officer failed to take preventative steps when witnessing an inmate fight. *See Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990). In affirming the jury's verdict in *Walker* that defendant prison guards Ritz and Jordan violated the prisoner-plaintiff's Eighth Amendment rights by failing to prevent another inmate, Eggleston, from killing the plaintiff, the Sixth Circuit noted that the officers had opportunities to prevent Fails' stabbing death by (1) opening the door the yard to permit Fails to elude Eggleston; (2) by restraining Eggleston at the door; (3) by shutting the door before Eggleston could follow Fails into the yard; and (4) by intervening when Eggleston attacked Fails in the yard as the guard looked on. *Id*. As the Court explained:

> The officers' inaction, when viewed in the most favorable light from the plaintiff's perspective, amounted to a callous disregard for Fails' safety despite obvious notice of imminent danger. Such conduct constituted the type of "deliberate indifference" that we have characterized in Roland as "obdurate" or "wanton."

*Id*. Similarly, in *Freeland v. Russell*, No. 2:09-cv-740, 2011 WL 901036 (S.D. Ohio Mar. 14, 2011), the court found that "[o]fficials present at the scene of an attack of an inmate by another inmate who do not intervene to act to end the assault may be deliberately indifferent." *Id*. at *2 (citation omitted). However, "an officer may not be liable for failing to intervene when intervention would place the officer in danger of harm or could further inflame the situation." *Id*. (citations omitted). The court explained that the determination of whether the officials were deliberately indifferent rested on whether there were facts to justify the failure to act. *See id*.

Here, the complaint alleges that Defendants Burlisky, Tatum, Gunter, and Atkins did nothing whatsoever to help Plaintiff during the attack. Indeed, the complaint alleges that these

9

Defendants provoked and encouraged the attack in the first place. The Court finds that these allegations state colorable failure to intervene claims against Defendants Burlisky, Tatum, Gunter, and Atkins in their individual capacities. *See Carico v. Benton, Ireland, and Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003) (where an officer provides an opportunity for attack and does nothing or stands idly by while an attack takes place without intervening, he violates the attacked prisoner's constitutional rights). These claims will be permitted to proceed.

**C. Denial of Medical Treatment**

Next, the complaint alleges that certain Defendants failed to provide medical care to Plaintiff. Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. *See Estelle*, 429 U.S. 97, 104 (deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994) (same); *Comstock*, 273 F.3d at 703 (there is no dispute that "psychological needs may constitute serious medical needs.") (citation omitted). A claim of deliberate indifference to a prisoner's medical or mental health needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by

10

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*.

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, the complaint alleges that Chief of Security Coleman, Unit Manager Sarratt, Corrections Officer Griffon, an as-yet identified unit manager, and other as-yet identified nurses and staff members "did nothing" for Plaintiff when he sought medical treatment for his injuries. (*Doc. No. x* at 12). The complaint further alleges that these Defendants laughed at Plaintiff and told him "that's what [he gets], and it was all [his] fault, and that they was [sic] not going to do

11

nothing [sic] to none [sic] of the inmates that jumped [Plaintiff]." (*Id*.) These individuals placed Plaintiff "in the hole with no medical attention" where he "laid in the ground in a freezing cell hoping that [he] didn't die in [his] sleep for 9 days." (*Id*.)

However, none of these individuals are named as Defendants in the complaint. The Court will permit Plaintiff to amend his complaint, should he so desire, to add these individuals as defendants. For those claims to proceed, Plaintiff must specifically explain how each Defendant acted with deliberate indifference to Plaintiff's medical needs.

**D. Loss of Personal Property**

The complaint alleges that the group of inmates who attacked Plaintiff on November 8, 2021 as well as "the women of R-DAP" took Plaintiff's property, including $200 worth of food.

The Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. *Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *5 (M.D. Tenn. Mar. 25, 2020). However, the United States Supreme Court has held that a plaintiff's loss of property at the hands of a state employee is not a violation of due process if the state affords a means to resolve the alleged loss. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). Where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a cognizable due process claim. *Id*. at 543-44. Accordingly, a plaintiff "must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995)). A prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *Id*. (citing *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985)). The Sixth Circuit Court of Appeals has held that

Tennessee's statutory remedy for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *Woodard*, 2020 WL 1469886, at *5 (citing *Brooks*, 751 F.2d at 199).

Here, Plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. Thus, because there appear to have been adequate state post-deprivation remedies available to Plaintiff, his claims concerning lost or taken property must be dismissed. *See, e.g., Woodard*, 2020 WL 1469886, at *5 (dismissing due process claim regarding property loss where plaintiff failed to allege inadequate post-deprivation remedies and alleged complaining to officials and filing grievances).

### E. Allegations Against the Warden

The complaint also alleges that no one investigated the November 8, 2021 incident and no inmates were punished for attacking Plaintiff. (Doc. No. 1 at 13). By failing to investigate and handle the matter, Plaintiff believes the Warden "show[ed] Plaintiff that [he] didn't deserve no [sic] respect from" the Warden. (*Id.*)

"A failure to take corrective action in response to an inmate grievance or Complaint does not supply the necessary personal involvement for Section 1983 liability." *Woodard*, 2020 WL 1469886, at *5 (citations omitted). To the extent Plaintiff seeks to impose liability on the Warden simply because he holds a supervisory position, there is no allegation that the Warden encouraged or directly participated in any of the alleged constitutional violations. A Section 1983 plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller*, 408 F.3d at 827 n.3, and Plaintiff has failed to do so with respect to the Warden.

13

Case 3:22-cv-00005   Document 6   Filed 01/19/22   Page 13 of 17 PageID #: 49

To the extent that Plaintiff is attempting to hold the Warden liable for the conduct of his subordinates, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that the Warden encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Neither does the complaint allege that Warden "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of a subordinate. *Id*. Consequently, the complaint fails to state Section 1983 claims upon which relief can be granted as to Defendant Warden Perry. These claims will be dismissed.

## F. Race-Based Allegations

The complaint generally alleges that Plaintiff "was discriminated with racial discrimination." (Doc. No. 1 at 14). Plaintiff believes that the November 8, 2021 attack was motivated by racial discrimination because all of the inmates who attacked him were white. The complaint alleges that the attack was "all because of Mrs. Burlisky, Mrs. Tatum, Mrs. Aktins, and Mrs. Gunter and other staff officer[s] who knew that [Plaintiff] was fixing to be attack[ed] . . . [Plaintiff] seen [sic] in every last one of they're [sic] eyes that they wanted [Plaintiff] to die . . . And the racism, too!" (*Id*. at 10).

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 335 (6th Cir. 1990). "To state a claim under the Equal Protection Clause, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry*, 922 F.2d at 335. The Supreme Court has instructed that "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purposes." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, "purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of [the action's] adverse effects upon an identifiable group." *Id.* at 676-77 (internal punctuation and citations omitted).

Here, while the complaint alleges discrimination based on race, Plaintiff has not demonstrated that he is a member of a protected class. In addition, the complaint lacks specific allegations that a state actor intentionally discriminated against Plaintiff because he is a member of a protected class. Even liberally construed, the complaint does not allege any Defendant's "undertaking a course of action *because of*" the action's adverse effects upon an identifiable group. *Ashcroft*, 556 U.S. at 676 (emphasis added). Plaintiff simply believes certain Defendants took action because of race. The complaint therefore fails to state an Equal Protection claim upon which relief can be granted, and any such claim raised in the complaint will be dismissed.

### G. Retaliation

Finally, the complaint alleges that R-DAP counselors Burlisky, Tatum, Gunter, and Atkins retaliated against Plaintiff by directing, encouraging, or facilitating an attack on Plaintiff by other inmates.

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X,* 175 F.3d at 396. A plaintiff has the burden of proof on all elements. *Murray v. Unknown Evert*, 84 Fed. App'x 553, 556 (6th Cir. 2003).

Here, although the complaint alleges that Defendants Burlisky, Tatum, Gunter, and Atkins took an adverse action against Plaintiff, the complaint does not allege that Plaintiff engaged in protected conduct. The complaint alleges that these Defendants directed, encouraged, or facilitated the November 8, 2021 attack because Plaintiff had engaged in a fight with his cellmate earlier that day. Fighting with one's cellmate is not protected speech or conduct. Thus, the complaint fails to state retaliation claims Defendants Burlisky, Tatum, Gunter, and Atkins under Section 1983. These claims will be dismissed.

## V. CONCLUSION

Having screened the complaint pursuant to the PRLA, the Court finds that the complaint states colorable failure to protect claims under 42 U.S.C. § 1983 against Defendants Atkins, Gunter, Burlisky, and Tatum in their individual capacities. These claims shall proceed for further development.

With respect to all other claims and Defendants, the complaint fails to state claims upon which relief can be granted under Section 1983. Accordingly, those claims and Defendants not specifically enumerated above will be dismissed, with the following exception. Plaintiff shall be permitted to file an amended complaint (1) naming as Defendants Chief of Security Coleman, Unit Manager Sarratt, Corrections Officer Griffon, an as-yet identified unit manager, and other as-yet identified nurses and staff members and (2) describing how each individual acted with deliberate indifference to Plaintiff's serious medical needs.

If Plaintiff elects to amend his complaint, he must do so within 30 days of entry of this Memorandum Opinion and accompanying Order. Upon receipt of an amended complaint, the Court will screen any new claims raised as required by the PLRA. If Plaintiff has not submitted an amended complaint at the conclusion of the 30-day period, the Court will direct service of process for the remaining Defendants and refer the case to the Magistrate Judge.

Finally, the Clerk will be directed to remove "Trousdale Turner Core Civic", f/n/u Grossman, f/n/u Gross, f/n/u Holmes, and f/n/u Lestor as Defendants to this action.

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE