IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **JEROME PERKINS** | ) |
| | ) |
| v. | ) No. 3:22-cv-00005 |
| | ) |
| **S.C.C.F. CORE CIVIC** *et al.* | ) |

TO: Honorable William L. Campbell, Jr., United States District Judge

## REPORT AND RECOMMENDATION

By Order entered February 15, 2022 (Docket Entry No. 13), this *pro se* and *in forma pauperis* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court is the motion for summary judgment (Docket Entry No. 69) filed by Defendants CoreCivic, Kimberly Atkins, Samantha Austin, Derek Beckham, Carla Burlesci, Larry Coleman, James Franks, Emily Gunter, Coty Mace, Natalie Mallard, Tiffany Sarratt, and Holly Tatum (hereinafter referred to collectively as "Defendants"). Also before the Court are three motions for summary judgment filed by Plaintiff. *See* Docket Entry Nos. 80, 81, and 92.

For the reasons set out below, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted, that Plaintiff's motion for summary judgment be denied, and that this action be dismissed in its entirety.

# I. PROCEDURAL BACKGROUND

Jerome Perkins ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Whiteville Correctional Facility in Whiteville, Tennessee. He filed this lawsuit *pro se* and *in forma pauperis* on January 5, 2022, seeking relief under 42 U.S.C. § 1983 for violations of his constitutional rights alleged to have been committed at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee where he was previously confined in 2021. *See* Complaint (Docket Entry No. 1).

Upon initial review of Plaintiff's complaint and amended complaint (Docket Entry No. 8) under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that he asserted three colorable Eighth Amendment claims against 13 Defendants at the SCCF: CoreCivic, a private entity that operates SCCF; Assistant Chief of Security Larry Coleman ("Coleman"); RDAP Counselors Kimberly Atkins ("Atkins"), Holy Tatum ("Tatum"), Emily Gunter ("Gunter"), and Natalie Mallard ("Mallard"); RDAP Addictions Treatment Manager Carla Burlesci ("Burlesci"); Captain Coty Mace ("Mace"); Nurse Samantha Austin ("Austin"); Security Threat Group Coordinator James Franks ("Franks"); Drug Testing Coordinator Derek Beckham ("Beckham"); Unit Manager Tiffany Sarratt ("Sarratt"); and Corrections Officer Edward Griffin ("Griffin").[1] *See* Memorandum Opinion and Order entered January 19, 2022 (Docket Entry Nos. 6 & 7), and Memorandum Opinion and Order entered February 15, 2022 (Docket Entry Nos. 12 & 13). All other claims and defendants that Plaintiff set out in his complaint and amended complaint were dismissed.

---

[1] Although Plaintiff incorrectly named several Defendants, the names as set out herein are correct.

Except for Defendant Griffin, all Defendants were served with process and filed a joint answer (Docket Entry No. 30).[2] A scheduling order and amended scheduling order were entered, providing for a period of pretrial activity in the case. All scheduling order deadlines have now expired. *See* Docket Entry Nos. 32 and 57. A jury has been demanded, but a trial date has not been set pending resolution of the dispositive motions.

## II. FACTUAL BACKGROUND AND PLAINTIFF'S CLAIMS

The pivotal events of this case are relatively straightforward and are essentially undisputed by the parties. These events, as taken from the record, are summarized as follows.

In November 2021, Plaintiff was housed in the EB Pod at SCCF in a two man cell. Plaintiff and his cellmate, as well as other inmates in the housing pod, were part of the Residential Drug Abuse Treatment Program ("RDAP"). During the early morning of November 8, 2021, Plaintiff, who is a black inmate, and his cellmate, who is a white inmate, got into a fight. As a result, Plaintiff's cellmate was taken to the medical department for evaluation of his injuries and Plaintiff was left in the cell. Other inmates in the housing pod were upset about the fight and approached RDAP counselors at approximately 8:30 when the counselors arrived for work. The inmates expressed that they wanted Plaintiff out of the pod because of his actions. Shortly thereafter, Plaintiff was physically attacked by several inmates in or around his cell. At some point, another inmate in the pod named Richardson extracted Plaintiff from the attack and took him out of the pod when an officer opened the pod door. Plaintiff was taken to the medical department and then to a segregation unit. While Plaintiff was in the segregation unit, he was

---

[2] Process for Defendant Griffin was returned unexecuted, with a notation that he was no longer employed at the SCCF. *See* Docket Entry No. 27. Plaintiff has not taken steps to serve Griffin with process at a different address.

seen by Defendant Austin after complaining of pain and breathing issue, and an x-ray of Plaintiff's chest and ribs was performed. The results of the x-ray showed nothing remarkable. Plaintiff remained in the segregation unit for several days.[3]

Plaintiff's lawsuit arises because he alleges that other events occurred that violated his civil rights, events which are disputed by Defendants. Plaintiff alleges that the RDAP counselors who were approached by the angry inmates told the inmates words to the effect that the inmates could "put Plaintiff out of the RDAP program however they wanted," which Plaintiff contends was an expression of the counselors' permission to use violence or to "beat" Plaintiff out of the RDAP. Plaintiff contends that this tacit permission for inmates to beat up other inmates was not the first instance when RDAP counselors had made such statements. Plaintiff further alleges that no SCCF staff member, including Defendants Burlesci, Tatum, Gunter, Atkins, or Mallard, took steps to intervene or help him while he was being attacked and that, although he was taken to the medical department after the attack, he was not examined or provided with medical treatment that day but was instead laughed at and mocked by various SCCF staff members. Plaintiff implicates Defendants Austin, Sarratt, Mace, Coleman, Beckham, Franks, Tatum, Gunter, Atkins, and Burlesci in the denial of immediate medical treatment. Plaintiff contends that none of the inmates who attacked him suffered any consequences, such as disciplinary infractions or being removed from RDAP, and that the incident was not investigated by prison officials. He asserts that the inmates who attacked him, the RDAP counselors, and the SCCF staff who were

---

[3] Other than a declaration from Defendant Burlesci that she permitted Plaintiff to graduate from the RDAP program despite fighting with his cellmate, *see* Declaration of Burlesci (Docket Entry No. 71-3) at ¶ 12, the record before the Court does not present a clear picture of the length of Plaintiff's segregation.

involved in the events are all white and that his alleged mistreatment was motivated by racism against him.

### III. MOTIONS FOR SUMMARY JUDGMENT

By their motion for summary judgment, Defendants seek summary judgment on each of Plaintiff's claims. Defendants support their motion with: (1) a statement of undisputed material facts (Docket Entry No. 70); (2) a memorandum of law (Docket Entry No. 71); (3) the declarations, and exhibits attached thereto, of SCCF Warden Grady Perry (Docket Entry No. 71-13) and SCCF Grievance Chairperson Heather Kelley (Docket Entry No. 71-11); and, (4) the declarations, and exhibits attached thereto, of each of the individual Defendants other than Defendant Griffin. *See* Docket Entry Nos. 71-1 through 71-10 and 71-12.

Defendants first raise an exhaustion defense under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e. Defendants contend that Plaintiff did not exhaust his available administrative remedies because the grievances that he filed about the events at issue were filed as Title VI grievances, which are limited to allegations of discrimination based upon race, color, or national origin. *See* Memorandum of Law at 6-10. Defendants argue these Title VI grievances were not sufficient to satisfy the PLRA exhaustion requirement for the Eighth Amendment claims that are brought in his lawsuit. Defendants also contend that Plaintiff failed to exhaust his claims against Defendants CoreCivic, Beckham, Austin, Mace, Sarratt, and Franks because he did not name them in any of the Title VI grievances and against Defendant Mallard because his grievance against her did not involve the claims at issue. *Id*.

Defendants also argue that they are entitled to summary judgment on the merits of Plaintiff's claims. Defendants contend that Plaintiff has no evidence that any CoreCivic policy or

5

custom was the moving force behind the alleged wrongdoings and, thus, Plaintiff cannot prevail on a Section 1983 claim brought directly against CoreCivic. With respect to Plaintiff's failure to protect/failure to intervene claim, they argue that (1) Defendant Mallard was not at the SCCF facility on November 8, 2021, and Defendants Burlesci and Gunter were not present in the EB Pod until after the attack was over, and (2) there is a lack of evidence that Defendants Atkins and Tatum acted, or failed to act, in a manner that would support a claim that they violated Plaintiff's Eighth Amendment rights. With respect to Plaintiff's lack of medical care claim, Defendant Austin argues that she provided treatment to Plaintiff on the day that he was attacked, as evidenced by the medical records and her own declaration, that Plaintiff had minimal injuries, and that there is no evidence supporting Plaintiff's allegation that he was not treated. Defendants Tatum, Gunter, Burlesci, Sarratt, Mace, Coleman, Beckham, and Franks argue that they are not medical care providers and had no role in providing medical care to Plaintiff. Finally, Defendants argue that Plaintiff's version of the events is so contradicted by the record that he cannot be believed and that he fails to create genuine issues of material fact in light of his own contradictory evidence.

Plaintiff responds to Defendants' motion with several filings. He asserts that the Whiteville facility has been on lockdown and that he has had limited access to legal material or inmate legal helpers, *see* motions for extension of time (Docket Entry Nos. 79 and 86), and further asserts that he did not receive Defendants' motion. *See* motion for summary judgment (Docket Entry No. 80).[4]

---

[4] Upon Plaintiff's assertion that he had not received a copy of the motion, Defendants served a second copy on Plaintiff. *See* Defendants' Response (Docket Entry No. 82).

Nonetheless, Plaintiff has filed a direct response to Defendants' motion, *see* Docket Entry Nos. 84, 85, and 90, and also filed his own motion for summary judgment. *See* second motion for summary judgment (Docket Entry No. 81). In these filings, Plaintiff disputes Defendants' contention that no wrongdoing occurred. Plaintiff maintains that Defendants are lying in their assertion that the RDAP counselors did not encourage the inmates to attack him. Plaintiff points out that he has entered into the record sworn statements from other inmates in support of his allegation that Defendants Atkins and Tatum told other inmates that they could remove Plaintiff from the RDAP and argues that he therefore has evidence supporting his claim that these Defendants directly contributed to the physical attack on him. Plaintiff further contends that he repeatedly requested medical attention after being attacked and that Defendant Austin is lying when she declares that she provided medical care to him on the day of the attack. He asserts that the medical records that Austin contends show that she provided treatment to him on the day of the attack have been falsified and that he was not provided with any treatment until three days after the attack. Plaintiff contends that prison officials have attempted to "cover up" the incident by refusing to provide in discovery any video of the incident that was captured by the prison security cameras.[5]

## IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which,

---

[5] By Orders entered January 17, 2023 (Docket Entry No. 68) and July 20, 2023 (Docket Entry No. 96), the Court addressed Plaintiff's motions about the lack of video footage.

if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249–50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

The standard of review when cross-motions for summary judgment are before the Court does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts ...[.] Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id*. (citations omitted).

## V. PLRA EXHAUSTION AND EIGHTH AMENDMENT STANDARDS

### A. PLRA's Exhaustion Requirement

Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies before filing a lawsuit about the conditions. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). Full exhaustion is required even if the inmate believes the grievance process is futile and will yield no relief. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense of failure to exhaust is raised and supported, the burden is on the prisoner plaintiff to present evidence showing that he has complied with the PLRA's requirement of exhaustion. *Napier*, 636 F.3d at 225.

## B. The Applicable Constitutional Standards

The Eighth Amendment prohibits conditions of confinement that amount to a wanton and unnecessary infliction of pain upon a prison inmate. *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986). Encompassed within this general protection is a duty on prison officials to take reasonable steps to protect prisoners from violence at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832–33, 844 (1994); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). Also encompassed within the protections of the Eighth Amendment is the right for a prison inmate to receive a certain level of medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). To establish a constitutional violation, a prison inmate must show that he was incarcerated under conditions that objectively posed a substantial risk of serious harm to him. *Farmer*, 511 U.S. at 834. The prisoner inmate must also show that prison officials subjectively acted with a sufficiently culpable state of mind by showing deliberate indifference to that risk of harm. *Id*. at 834. "Deliberate indifference" is a higher standard than negligence and requires that the official know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. To show deliberate indifference, a plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835

## VI. ANALYSIS

After review of the parties' filings and the entire record in this case, the Court finds that summary judgment should be granted to Defendants for the primary reason that Plaintiff has failed to rebut Defendants' PLRA exhaustion defense. Because exhaustion under the PLRA is a threshold issue and because the lack of exhaustion requires dismissal of the entire case, it is not

necessary to address any other argument for summary judgment made by Defendants or to address Plaintiff's request for summary judgment in his favor.

Defendants have shown that TDOC policy provides an established grievance process for inmates that permits them to file grievances about prison issues pursuant to the general administrative grievance process. *See* Declaration of Heather Kelley (Docket Entry No. 75-1). TDOC inmates may also file Title VI grievances that are directed at allegations of racial, color, or national origin discrimination by prison officials. *Id*. Each type of grievance is subject to initial review by prison officials, and a multi-level appeal process is available for grievances that are initially denied at the first step. *Id*.[6]

Defendants present evidence that Plaintiff filed four administrative grievances about the events at issue: (i) a grievance on filed on November 11, 2021 (#351296); (ii) a grievance filed on November 28, 2021 (#351482); (iii) a grievance filed on December 7, 2021 (#351557); and, (iv) a grievance filed on January 9, 2022 (#351999). *See* Declaration of Kelley at ¶¶ 16-25 and attached exhibits. Each of these grievances was labeled by Plaintiff as a "Title 6" grievance and was processed by prison grievance officials as a Title VI grievance in accordance with TDOC Policies #501.01(VI) and 103.10(VI) for a grievance made under Title VI. *Id*. Each grievance went through the complete administrative appeal process. *Id*. Based upon this evidence and Defendants' argument that the Title VI grievance are not sufficient to exhaust Plaintiff's claims under the PLRA, the Court finds that Defendants have raised and sufficiently supported their

---

[6] Although not specifically referenced by Defendants or by Kelley, the Court takes judicial notice that the applicable TDOC grievance procedures are set out in TDOC Policy #501.01 (Inmate Grievance Procedures) and TDOC Policy #103.10 (Title VI – Civil Rights Act of 1964). *See* Tennessee Department of Correction website, https://www.tn.gov/correction/about-us/policies-and-procedures.html; Fed. R. Evid. 201(b) (permitting judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

11

affirmative defense of lack of exhaustion under the PLRA. The burden therefore falls to Plaintiff to rebut this defense. *Napier*, 636 F.3d at 225.

In a recent filing, Plaintiff sets out what appears to be an allegation that, prior to his first Title VI grievance, he filed a regular grievance about the events at issue but prison officials failed to respond to the grievance. *See* Plaintiff's motion to response (Docket Entry No. 90) at 1 ("Plaintiff did first grievance the incident of Nov. 8, 2021. First & did not get no response back from defendants. So Plaintiff filed a Title VI grievance. Many times."). This allegation is construed as an argument by Plaintiff that the grievance process was not available to him and the exhaustion defense should not apply. *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

The Court finds no merit in Plaintiff's argument. His allegation is not supported by any actual evidence that affirmatively shows that he attempted to file a regular grievance prior to his first Title VI grievance. Plaintiff fails to reference such an initial grievance in any of his prior filings or in any of the Title VI grievances that he filed. The allegation is also not supported by his complaint, which alleges only that he pursued a Title VI grievance. *See* Complaint at 3. Further, given that the incident occurred on November 8, 2021, and Plaintiff filed his first Title VI grievance three days later on November 11, 2021, there would not have been sufficient time for Plaintiff to have received a response to regular grievance prior to filing his first Title VI grievance a mere three days later. Given these factors, the Court finds that Plaintiff has not supported his assertion that he attempted to pursue a grievance prior to his Title VI grievance but was thwarted by the failure to prison officials to respond to this grievance.[7]

---

[7] Even if Plaintiff did not receive a response to a grievance, he still had a remedy under the TDOC grievance policy allowing him to advance the grievance to the Level II stage and again to the Level III stage. This option forecloses any argument that the grievance process was unavailable because prison officials failed to respond to a grievance. *See Belser v. Woods*, No.

12

Case 3:22-cv-00005   Document 98   Filed 07/24/23   Page 12 of 17 PageID #: 790

Accordingly, exhaustion under the PLRA must have occurred by means of the four Title VI grievances filed by Plaintiff. However, three of the grievances cannot be deemed to satisfy the exhaustion requirement because they either were not filed or were not fully completed until after this lawsuit was filed on January 5, 2022. Plaintiff's final Title VI grievance, #351999, was not filed until January 9, 2022, after he initiated this lawsuit. *See* Docket Entry No. 75-1 at 35. The other two grievances, #351482 and #351557, were not finally resolved until January 24, 2022, when the TDOC assistant Commissioner denied the grievances upon the Level III appeal. *See* Docket Entry 75-1 at 7 and 20. The PLRA exhaustion requirement requires full exhaustion prior to a lawsuit being filed, and completing the grievance process while a lawsuit is pending does not satisfy the PLRA's exhaustion requirement. *See Fraley v. Ohio Dep't of Corr.*, No. 16–4720, 2018 WL 2979902, *2 (6th Cir. Mar. 22, 2018) (prisoner failed to exhaust under the PLRA because his lawsuit was filed prior to his grievance appeal being completed); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Bostic v. Tennessee Dep't of Corr.*, No. 3:18-cv-00562, 2020 WL 525910, *2 (M.D. Tenn. Feb. 3, 2020) (a prison grievance that was filed after the prisoner plaintiff moved to add a defendant to a lawsuit did not meet the exhaustion requirement of the PLRA).

---

17-2411, 2018 WL 6167330, *2 (6th Cir. July 6, 2018) (holding that inmate's allegation that grievance coordinator would not respond to his appeals was insufficient to render grievance process unavailable where regulation permitted inmate to proceed to the next step when no timely response to grievance was given); *Pool v. Klenz*, No. 17–3426, 2018 WL 1989637, *3 (6th Cir. Jan. 17, 2018) (prison inmate who alleged that prison official did not respond to his grievance filings failed to demonstrate that the grievance process was not available because the applicable grievance procedure provided for steps the inmate should have taken in the absence of a response that would have allowed him to continue the process); *Gilmore v. Ormond*, No. 6:16-286-DCR, 2019 WL 943392, *4 (E.D. Ky. Feb. 26, 2019) (prisoner, who alleged that prison officials refused to process his grievance, failed to show exhaustion because he was entitled to appeal if no timely response was forthcoming).

13

Accordingly, whether Plaintiff complied with the PLRA's exhaustion requirement with respect to the claims he asserts in this action depends upon the Title VI grievance that he filed on November 11, 2021. In that grievance, Plaintiff alleged that he was assaulted by "all the white boys in R-DAP on some racist act" and that "the counselors over R-DAP [Burlesci, Gunter, and Tatum] just let it happen. They didn't care about me or my safety." *See* Docket Entry No. 75-1 at 43. Plaintiff further alleged that he was denied medical attention and that "these staff worker and counselor here at S.C.C.F. are truly racists toward black people." *Id*. The Assistant Warden and Alternate Title VI Coordinator initially deemed the grievance as insufficient to state a Title VI grievance "as the inmate did not indicate how he was treated differently as a result of his race, color, or national origin. This inmate was in a physical altercation and it also show that inmates of the same race was involved in the is alteration as well. Inmate was evaluated by medical and placed in segregation." *Id*. at 75-1 at 46-47. Upon Plaintiff's appeal, in which he reiterated his allegations, made new allegations against Defendant Atkins, and alleged that it was "racial discrimination" because "nothing was done about this," *id*. at 75-1 at 45, Plaintiff's allegations were found to not substantiate a Title VI violation and the grievance appeal was denied by the TDOC Central Office Title VI Coordinator and then by the Assistant Commissioner of Prisons on December 17, 2021. *Id*. at 75-1 at 41 and 44.

The legal claims at issue in this case involve Eighth Amendment claims that Defendants acted with deliberate indifference towards his personal safety and his need for medical care. All other claims, including Fourteenth Amendment Equal Protection claims, have been dismissed from the case. *See* Memorandum entered January 19, 2022 (Docket Entry No. 6) at 14-15. The crux issue is therefore whether Plaintiff's Title VI grievance, which is specifically limited by TDOC policy to allegations of "discrimination on the basis of race, color, or national origin," *see*

TDOC Policy #501.01(K)(2) and TDOC Policy #103.10(VI)(C), was sufficient to have exhausted his Eighth Amendment claims under the PLRA.

Neither the Supreme Court, the Sixth Circuit, nor this Court has yet to address this narrow issue. However, in several recent cases, the Western District of Tennessee directly addressed the issue and concluded that an inmate's Title VI grievance failed to satisfy the PLRA's exhaustion requirement for legal claims that do not raise a Title VI claim, such as an equal protection claim. *See Delk v. Hardeman Cnty. Corr. Facility*, No. 1:16-cv-01275, 2022 WL 891229, *13 (W.D. Tenn. Mar. 25, 2022) ("In Plaintiff's second amended complaint, he does not include any Title VI claims. Therefore, whether Plaintiff properly exhausted the administrative remedies available to him by appealing his Title VI grievance is a moot point. This issue is settled because if Plaintiff did properly exhaust his Title VI claims, he could have brought those claims to this Court, but he has made no Title VI allegations in this lawsuit."); *Ballinger v. Dotson*, No. 1:18-cv-01140-SHM-cgc, 2022 WL 801602, *3 (W.D. Tenn. Mar. 15, 2022) (because TDOC policy limits a Title VI grievance to allegations of racial discrimination, the prisoner plaintiff failed to exhaust his administrative remedies for an Eighth Amendment excessive force claim by pursuing only a Title VI grievance about the alleged excessive force); *Gregory v. Morton*, No. 19-1107-JDT-cgc, 2020 WL 5753198, *4 (W.D. Tenn. Sept. 25, 2020) (finding that prisoner's Title VI grievance was only sufficient to exhaust his Fourteenth Amendment equal protection claim and did not exhaust an Eighth Amendment failure to protect claim that was based upon the same underlying facts).

The Court finds these cases to be persuasive and in line with the requirements of exhaustion under the PLRA. Full and proper exhaustion under the PLRA requires compliance with the applicable terms of the grievance procedure that is at issue. *Jones*, 549 U.S. at 218–19;

*Woodford*, 548 U.S. at 90–91. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 217–18. The TDOC policies specifically limit Title VI grievances to allegations of racial, color, or national origin discrimination. Although Plaintiff clearly took steps to pursue a Title VI grievance and included in his grievance many of the allegations that he now makes in the instant lawsuit, by pursuing his allegations in a Title VI grievance the scope of review of his grievance by prison officials was limited by the applicable policy to review of allegations of racial discrimination. Consequently, his Title VI grievance had a limited scope for the purpose of exhaustion, and the Court finds that the Title VI grievance failed to exhaust the Eighth Amendment claims that Plaintiff now seeks to pursue. Plaintiff fails to offer an argument that rebuts the PLRA exhaustion defense. For this reason, Defendants are entitled to summary judgment on Plaintiffs' claims.[8]

Because the exhaustion defense requires dismissal of Plaintiff's lawsuit as a threshold matter and without consideration of the merits of his claims, it is unnecessary to address whether any factual issues exist that rise to the level of genuine questions of material fact that must be resolved by the jury and whether summary judgment is warranted in favor of either party on the merits.

---

[8] Defendant Griffin, who has not been served with process, is clearly subject to dismissal under Rule 4(m) of the Federal Rules of Civil Procedure. Any claim against him is likewise subject to dismissal for lack of exhaustion.

## VII. RECOMMENDATION

For the reasons stated, it is respectfully RECOMMENDED that:

(1) The motion for summary judgment (Docket Entry No. 69) filed by Defendants CoreCivic, Kimberly Atkins, Samantha Austin, Derek Beckham, Carla Burlesci, Larry Coleman, James Franks, Emily Gunter, Coty Mace, Natalie Mallard, Tiffany Sarratt, and Holly Tatum be GRANTED based on the PLRA lack of exhaustion defense and that this action be DISMISSED; and

(2) Plaintiff's motions for summary judgment (Docket Entry Nos. 80, 81, and 92) and motions for extension of time (Docket Entry Nos. 79 and 86) be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge